KINGS COUNTY—HON. ROSWELL C. BRAINARD, SURROGATE—March, 1863.

## KELSO v. CUMING.

*In the Matter of the Accounting of* JOHN S. KELSO, *Administrator of the Estate of* THOMAS W. CUMING, *deceased.*

L. C. devised premises to the intestate, "if he should live until he is twenty-one, or marry:" in case of his death under twenty-one, unmarried, then to V. The intestate died under twenty-one, unmarried.

  *Held*, 1. The fee had vested in the intestate, and was not contingent upon his arrival at the age of twenty-one, or his marriage.

  2. The rents and profits accruing between the vesting of the fee and the death of the intestate belonged to him, and the remainder thereof

left unexpended, were assets in the hands of his administrator, to be accounted for.

3. The rents and profits accruing after the death of the intestate went with the fee to V.

But where certain personal property was bequeathed to the intestate, on the same terms, to be held *in trust* for him until he was twenty-one,—*Held*, that V. took the property either as next of kin of L. C., or by the will.

The will of Louisa W. Cuming, among other things, contained the following bequests: "I give and bequeath to my son, Thomas Waring, all my silver and plated ware, and two parlor clocks, and direct the same to be held in trust for him until he shall marry, or arrive at twenty-one years of age."

Then, after giving a life estate to her husband, in all her property, real and personal, "I give, devise, and bequeath to my son, Thomas Waring, all my property, real and personal, of every nature and kind, except the aforesaid household furniture, watch, and jewels, after the death of my husband, if he should live until he is twenty-one years of age: or if he should marry before he is twenty-one years of age, and die, leaving a child or children, then I give, devise, and bequeath the same to his child; or, if more than one, then to be divided equally among them. If my son should die before he becomes twenty-one years of age, unmarried, and without leaving a child or children, and my husband should have departed this life, then I give, devise, and bequeath to my sisters, Leonora P. Van Antwerp and Estherina M. Fisher, all the estate given to me by my mother, of every nature and kind, and also my silver and plated ware and two parlor clocks, to be equally divided between them; and in case either of my said sisters should depart this life without leaving a child or children, then the survivor to take the whole," &c.

The father died a few hours after the mother, on the 26th day of August, 1856. The son, the intestate herein, being a minor, the general guardian, under the will, took possession of his estate and managed all his affairs until the intestate's death, under age and without issue, when he paid and delivered the net balance of the personalty of the estate to the administrator of the intestate, John S. Kelso, the husband of

Leonora P. Van Antwerp, the surviving residuary legatee,—Estherina M. Fisher, the other residuary legatee, having died before the intestate. The administrator, on receiving the personalty of the estate from the intestate's guardian, consisting, 1st, of the net balance of the intestate's income unexpended in his support, amounting to $8,199.94; and 2d, the silver and plated ware and the two parlor clocks, held in trust for the intestate, valued at $2,065.33; he invested the cash for the benefit of his wife, as residuary legatee, and also delivered to her the balance of the proceeds of the personal property.

On his final accounting, exceptions were filed by Hugh F. Cuming and Anne Briscoe, brother and half-sister of the intestate's father, who claimed that the administrator should account for $8,199.94, rents and profits of the real estate, and should also account for $2,065.33, appraised value of the articles of silver ware, and other property, also received from the guardian, and claimed by Leonora P. Kelso, as her property, under the will of her sister, and not as assets of the intestate's estate.

ROBERT BENNER *and* CHARLES TRACY, *for the Administrator.*

I. The gift of the personal fund to the son is conditional, and he could not take the principal or income until the happening of the contingent event. If such event should not happen, the gift to him would fail, and the fund would go to Mrs. Kelso, survivor of Estherina M. Fisher. The gift to the husband for life is absolute; and the gift to the son, and alternately with him to the sisters, depends on a condition precedent. A contingent remainder in fee, being a remainder that might be or might not be, according to the happening of a specified future uncertain event, always failed if the particular estate in fact ceased before the event happened. (2 *Blackst. Com.*, 165, *et seq.*) In the law of personal property, however, the rule was different, and when the particular interest ceased, the property awaited the happening of the event; and if the event so turned out as to give effect to the future disposition, then the future interest commenced,

although an *hiatus* had separated it from the particular estate by a period of time. The bequest clearly is made on a condition precedent. The gift is made to the son, "if he should live until he is twenty-one years of age," &c. If he should live until that age, the property shall be his : if he should not live to that age, &c., the property shall go to the others named. If the son dies childless, unmarried, and under age, the gift is to the two sisters, and not to him : if he lives to be twenty-one, the gift is to him, and not to them. The falling out of the event fixes the destination of the property. There are no successive interests—first to the son, and afterwards to the sisters, or first to them, and afterwards to him. The gift is only one, and is complete, and the event simply fixes who shall be the taker. It is clear that in all such cases of personal property bequeathed, there is no vesting of an interest in, nor any sort of possessory right taken by, any of the contingent legatees, until the event shall happen. (*Andrew* v. *N. Y. Bible, &c., Soc.,* 4 *Sandf.,* 156; *Worthington on Wills,* 98, 98; *Toml. Dict.,* "Condition;" *Caw* v. *Robertson,* 5 *N. Y.,* [1 *Seld.*], 125; *Lister* v. *Bradley,* 1 *Hare,* 10, 13; *Atkinson* v. *Turner,* 2 *Atk.,* 41; 1 *Jarm. on Wills,* 760; *Taylor's Preced. of Wills,* 600.)

II. The contingency of the devise is precisely the same as the contingency of the bequest. 1. It is true, that while the common law defeated a future freehold estate, given conditionally, if the particular estate ceased before the prescribed event occurred, the courts were inclined to help the contingent devisee by a favorable construction, and to seek for something to show an intention of the testator that his gift should not be deemed a contingent remainder, but an immediate estate, vested at once and subject only to the risk of being defeated by the subsequent adverse happening of the event. Where, however, the words properly express a contingency, the chance of a future uncertain event—"*si continget,*" &c.,—nothing but proof of a different intention can prevail. 2. In the like spirit the courts have been astute to criticize the words used to express a contingency. (*Doe* v.

*Moore*, 14 *East*, 601.) But the words used in the present case will bear no flexion. The word "if" is the best and perfect expression of the condition precedent. 3. The courts, however, have not been uniform nor constant in their treatment of contingent devises. (1 *Jarm. on Wills*, 743, 744; *Humph. on Real Prop.*, 260; *Jackson* v. *Winne*, 7 *Wend.*, 47, 52; *Gifford* v. *Thorn*, 1 *Stock.*, *N. J.*, 702; *Roome* v. *Phillips*, 24 *N. Y.*, 463.) 4. But all the struggles of the courts, in this State, to convert contingent remainders into vested remainders defeasible by subsequent events, in order to avoid the rigid rule of the common law as to future estates in freehold, are no longer necessary. (1 *Rev. Stat.*, 723, §§ 10, 24, 25.) 5. Nor is there any thing in this will, nor in the surrounding circumstances, showing an intention of the testatrix to give her son a vested estate during his minority. 6. The fact that the personal bequest is clearly contingent, must determine the meaning and force of the same words when they express a devise of land. The two kinds of property, real and personal, not only are given here by like words, but are given by one and the same sentence *uno flatu.*

III. The contingent remainders to the son and to the sisters are future estates, to take effect in the alternative. (1 *Rev. Stat.*, 724, § 25.) Neither of these remainders comes after the other or follows the other. The happening of the event, either way, carries the estate forever to one of the two alternative takers. There is but one estate in the contemplation of the testatrix, namely, the remainder awaiting the happening of the prescribed event, then to take the direction which such happening must cause (either to him or to them), and to go entire and absolutely in that direction. The whole of the provisions for this remainder must stand or fall together; and the disposition of the land, with reference to the law for suspending estates, is one and indivisible; the whole disposition of the fee after the husband's death must stand or fall together. The question as to which is the next eventual estate, during the period when these rents arose, comes to a ready solution. Neither of them can be said properly to

precede the other; for whenever either one of them commences, the other fails altogether. The order of describing them in the will has nothing to do with the question, which may soonest take effect. The commencement of the sisters' remainder, if it ever occurs, must take place before the time when the son's remainder can, by possibility, commence. Thus, of the two estates in remainder, that of the sisters is necessarily the nearest; and, therefore, they are the persons "presumptively entitled to the next eventual estate." (1 Rev. Stat., 726, § 40.) During the son's minority, their expectant estate is the next eventual estate. The statute gives to them the rents for the intervening period. (1 Rev. Stat., 726, § 40.) If, however, the whole fee in remainder should be treated as a single eventual estate, contingent in respect of the persons to take it, then the rents would go to the two alternate takers equally, as the persons entitled to the next eventual estate.

DEXTER A. HAWKINS *for Contestant.*

I. Louisa W. Cuming, the mother of the intestate, after a life estate to her husband, left a remainder in fee to her son, the intestate, defeasible on his death without issue before arriving at the age of twenty-one. This remainder in fee vested in the intestate on the death of his mother; and on the death of his father, the intestate entered into the possession of his estate. The intestate took under the will a vested remainder, and not a contingent remainder. (*Roome* v. *Phillips*, 24 *N. Y.*, 463; *Boraston's Case*, 3 *Coke R.*, 19; *Goodtitle* v. *Whitby*, 1 *Burr.*, 228; *Edwards* v. *Hammond*, 3 *Lev.*, 132; 3 *Term. R.*, 365; *Bromfield* v. *Crowder*, 4 *Bos. & Pul.*, 313; 4 *Burr.*, 313; *Roe* v. *Briggs*, 16 *East*, 411; *Doe* v. *Moore*, 14 *Ib.*, 601; *Jackson* v. *Beach*, 2 *Johns. Cas.*, 399; *Hill. on Real Prop.*, 3 ed., 524, §§ 32, 33, 46, 47.)

II. The income, from the day of the death of his father to his own death, of the property devised to intestate by his mother, became his absolutely; and on intestate's death, the balance unexpended went to the administrator as assets of

the intestate. (*Snow* v. *Poulden*, 1 *Keen.*, 186 ; 1 *Jarm. on Wills*, 743.)

III. Assuming that the intestate took a contingent remainder, instead of a vested remainder, still the income of the estate from the day of his father's death up to his own death vested in him absolutely, as it accrued, and the balance, $8,212.06, must be accounted for by the administrator, and distributed to the next of kin. 1. This devise, then, is clearly a contingent remainder. It could not vest, even if otherwise good, until the boy's death. We have two contingent remainders, limited upon a life estate—in other words, two expectant estates ; and the boy would be " the person presumptively entitled to the next eventual estate." 2. At common law, the termination of the precedent life estate before the happening of the contingency would defeat absolutely the contingent remainders, and the estate would go to the heir-at-law. (2 *Blackst.*, 171.) 3. By 2 Rev. Stat., 725, § 34, the contingent remainders vest, when the contingency happens, to the same extent as if the precedent estate had continued up to the happening of the contingency. 4. But by section 40, the intestate was presumptively entitled to the next eventual estate. Until he was dead, no other party had any claim. (*Haxtun* v. *Corse*, 2 *Barb. Ch.*, 518.) By section 25, two or more future estates may be created to take effect in the alternative ; so that if the first in order shall fail to vest, the next in succession shall be substituted for it, and take effect accordingly. The son's is " the first in order :" the sisters' can never come into existence except on the death of the son under age without issue. During the son's minority, the person competent to take the income is not the sister, for she is not the first in order. If she could not take it as it accrued, she cannot take it now. This income vested absolutely somewhere, as it accrued ; otherwise there would be an accumulation.

RICHARD O'GORMAN, *for Contestant, Anne Briscoe,*

Cited *Jarman on Wills* (726–758) ; *Burton on Real Prop.* (9 *n.* 25, 296, 802) ; *Kane* v. *Astor* (5 *Sandf.*, 467) ; *Smither*

v. *Willock* (9 *Ves.*, 233); *Peyton* v. *Bury* (2 *P. Wms.*, 626); 4 *Kent's Com.* (205); *Furness* v. *Fox* (1 *Cush.*, 134); *Bromfield* v. *Crowder* (4 *Bos. & P.*, 313); 2 *Swan.*, 442; *Andrew* v. *N. Y. Bible, &c., Soc.* (4 *Sandf.*, 156); *Jackson* v. *Winne* (7 *Wend.*, 47); *Caw* v. *Robertson*, 5 *N. Y.* [1 *Seld.*], 125).

THE SURROGATE.—I. The fee of the real estate vested under the will in the intestate as a present gift, subject to the life estate of his father.

II. The rents due and collected by the guardian, during the lifetime of the intestate, belonged to the intestate. But rents collected February 1st, 1860, after the death of the intestate, go with the fee to Mrs. Kelso.

III. The balance of the proceeds of the personal estate ($2,053.21), having come from the intestate's mother and her relatives, goes to Mrs. Kelso, either as next of kin of the mother or by the will.

The interest on the balance of rents paid to the administrator by the guardian, and belonging to the intestate's estate, is to be accounted for. The said balance ($8,212.06) and the interest ($1,734.45), are assets in the hands of the administrator, to be divided among the three next of kin.*

---

NIAGARA COUNTY—HON. M. M. SOUTHWORTH, SURROGATE—1859.

---

* On an appeal to the Supreme Court, Second District, the Surrogate's decree in this case was affirmed, except as to an allowance to counsel. November Term, 1863.